UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DARRYL REITAN, Individually and on Behalf          |
of All Others Similarly Situated,                          |
                                                                          |
                            Plaintiff,                             |               14-CV-4471 (KMW)
                                                                          |               14-CV-4745 (KMW)
-against-                                                            |               OPINION & ORDER
                                                                          |
CHINA MOBILE GAMES & ENTERTAINMENT |
GROUP, LTD, KEN JIAN XIAO, YING                     |
SHULING, CREDIT SUISSE SECURITIES (USA)|
LLC, BARCLAYS CAPITAL, INC., JEFFRIES      |
LLC, BREAN CAPITAL, LLC and NOMURA          |
SECURITIES INTERNATIONAL, INC.,                    |
                                                                          |
                            Defendants.                         |
-------------------------------------------------------------X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOPHIA CHANG, Individually and on Behalf          |
of All Others Similarly Situated,                          |
                                                                          |
                            Plaintiff,                             |
                                                                          |
-against-                                                            |
                                                                          |
CHINA MOBILE GAMES & ENTERTAINMENT |
GROUP, LTD, KEN JIAN XIAO, YING                     |
SHULING, CREDIT SUISSE SECURITIES (USA)|
LLC, BARCLAYS CAPITAL, INC., JEFFRIES      |
LLC, BREAN CAPITAL, LLC and NOMURA          |
SECURITIES INTERNATIONAL, INC.,                    |
                                                                          |
                            Defendants.                         |
-------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

  Two similar, putative securities fraud class actions against China Mobile Games &

Entertainment Group, Ltd. ("CMGE"), certain of its officers and directors, and several

1

investment banks who underwrote CMGE's secondary public offering (collectively "Defendants") are currently before this Court. The two actions are *Reitan v. China Mobile Games & Entertainment Group, LTD*, 14-CV-4471, and *Chang v. China Mobile Games & Entertainment Group, LTD*, 14-CV-4745. In both actions, the plaintiffs allege that CMGE materially misled the public by deliberately making false or misleading statements, or by failing to disclose facts to correct such misleading statements. Both actions claim that these statements artificially increased the price of CMGE securities.

Miran Segregated Portfolio Company – Miran Long Short Equity Segregated Portfolio ("Miran") and Johnnie Dormier ("Dormier") have each moved to consolidate the two actions, and to be appointed as lead plaintiff of the consolidated class. Each movant also seeks to have its counsel appointed lead counsel. For the reasons stated below, the Court GRANTS the motions to consolidate the actions; appoints Miran as lead plaintiff and Faruqi & Faruqi as lead counsel for the consolidated class; and DENIES Dormier's lead plaintiff motion.

## I.       BACKGROUND

### A.  The Complaints

CMGE, a Cayman Islands corporation headquartered in Guangzhou, China, is the largest publisher and developer of mobile games in China. (*Reitan* Compl. [*Reitan* ECF No. 1] at ¶ 2).

On June 20, 2014, Plaintiff Darryl Reitan filed the *Reitan* action "on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased CMGE's American Depository Shares . . . between September 20, 2012 and June 19, 2014." (*Id*. ¶ 1). Reitan alleges that "Defendants made false and/or misleading statements and/or failed to disclose that CMGE was engaged in a bribery scheme within the Company's game publishing business, that CMGE was engaged in undisclosed related party transactions, and that CMGE

lacked internal controls." (*Id.* ¶ 5). On June 26, 2014, Sophia Chang filed the *Chang* action on behalf of the same individuals, *see* (*Chang* Compl. [*Chang* ECF No. 2] at ¶ 1), and alleged the same claims against CGME, *see* (*id.* ¶ 5).

### B. The Lead Plaintiff and Consolidation Motions

On August 19, 2014, five parties filed motions seeking to be appointed as lead plaintiff: (1) a group consisting of ZhenDong Company Limited Sun Bing, Tian Yu Ma, and Huang Shuainan (collectively "China Mobile Investors Group" or "CMIG"); (2) OP Investment Management Limited ("OPI"); (3) Ashok Sagar; (4) Miran; and (5) Dormier. (Notice of Non-Opp'n [*Reitan* ECF No. 43] at 1). Based on the losses each movant alleged, CMIG suffered the greatest financial loss, totaling $935,272. (CMIG Memo. of Law [*Reitan* ECF No. 18] at 6). Miran claims to have lost $84,834, (Miran Memo. of Law [*Reitan* ECF No. 16] at 8), while Dormier alleges he lost $40,667, (Dormier Memo. of Law [*Reitan* ECF No. 11] at 6).

On July 27, 2014, both OPI and Miran withdrew their motions to be appointed as lead plaintiff. (OPI Notice of Withdrawal [*Reitan* ECF No. 24] at 2); (Miran Notice of Withdrawal [*Reitan* ECF No. 25] at 2). On September 4, 2014, Ashok Sagar withdrew his motion as well. (Sagar Notice of Withdrawal [*Reitan* ECF No. 41] at 2). When Miran withdrew its lead plaintiff motion, it stated that it was doing so because CMIG's losses "appear[] to be the largest of any of the other movants." (Miran Notice of Withdrawal 2). However, on September 5, 2014, CMIG also withdrew its lead plaintiff motion, leaving Dormier as the only party seeking appointment as lead plaintiff. (CMIG Notice of Withdrawal [*Reitan* ECF No. 42] at 2). Approximately ninety minutes after CMIG filed its withdrawal motion, Dormier filed a notice of non-opposition to his lead plaintiff motion, asserting that all other movants had withdrawn and therefore his motion was unopposed. (Notice of Non-Opp'n 1–2); (Reply to Dormier [*Reitan* ECF No. 49] at 2).

Miran stepped back into the picture, however, on September 17, 2014, when it filed a "Notice of Withdrawal of Withdrawal of [Miran's Lead Plaintiff Motion]." (Notice of Withdrawal of Withdrawal [*Reitan* ECF No. 45]). Essentially, Miran's new motion sought to reinstate its motion to be appointed lead plaintiff, which it had withdrawn approximately six weeks before by withdrawing that earlier withdrawal motion. Dormier filed a response opposing Miran's "Withdrawal of Withdrawal" motion as procedurally barred and otherwise untimely. (Dormier Resp./Objection [*Reitan* ECF No. 46]).

Both Miran and Dormier also seek to consolidate the *Reitan* and *Chang* actions. (Miran Memo. of Law 4–5); (Dormier Memo. of Law 3–4).

## II.     CONSOLIDATION

### A.  Legal Standard

Federal Rule of Civil Procedure 42(a) provides that a court may consolidate actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Consolidation is "a valuable and important tool of judicial administration" that should be "invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted).

Under Rule 42 and the Private Securities Litigation Reform Act (the "PSLRA"), actions need not be "identical" to allow for consolidation. *Pinkowitz v. Elan Corp., PLC*, Nos. 02-CV-865 et al., 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (Knapp, J.). Courts have "broad discretion to determine whether consolidation is appropriate." *Johnson*, 899 F.2d at 1284; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (Buchwald, J.). Courts have looked to the particular facts of cases to determine if the anticipated benefits of consolidated actions,

such as considerations of judicial economy and unnecessary costs to the parties, "outweigh potential prejudice to the parties." *Kaplan*, 240 F.R.D. at 91; *see also In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 268 (S.D.N.Y. 2009) (Chin, J.).

### B.  Consolidation is Warranted

The Court finds that consolidation is appropriate here because the *Reitan* and *Chang* actions involve substantially identical questions of law and fact.  As an initial matter, the two actions involve the same plaintiffs and defendants.  Both suits are putative securities class actions on behalf of all persons who purchased CMGE's American Depository Shares between September 20, 2012 and June 19, 2014.  (*Reitan* Compl. ¶ 1); (*Chang* Compl. ¶ 1).  Both actions also seek remedies against CMGE, several of its senior executives, and the investment banks who underwrote CMGE's secondary public offering.  (*Reitan* Compl. ¶¶ 14–23); (*Chang* Compl. ¶¶ 14–23).  Both actions allege the same wrongdoing and seek identical relief.  Both complaints plead that Defendants "failed to disclose" or made "false and/or misleading statements" concerning: (1) CMGE's involvement in a bribery scheme within the company's game publishing business, and (2) CMGE's lack of internal controls.  (*Reitan* Compl. ¶ 29); (*Chang* Compl. ¶ 29).  Both suits seek damages for that misconduct under Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated under the Exchange Act.  (*Reitan* Compl. ¶¶ 9, 14–23); (*Chang* Compl. ¶¶ 9, 14–23).

Not surprisingly, each complaint alleges that the same questions of law and fact are common to the class.  Those questions include: (1) whether Defendants' conduct violated the federal securities laws; (2) whether statements made by Defendants to the investing public

misrepresented material facts about the business and operations of CMGE;[1] and (3) to what extent the members of the Class have sustained damages.  (*Reitan* Compl. ¶ 36); (*Chang* Compl. ¶ 37).  The *Chang* complaint contains one additional question not explicitly listed in the *Reitan* complaint: whether the price of CMGE American Depository Shares was artificially inflated. (*Chang* Compl. ¶ 37).  That question, however, is implicitly part of the *Reitan* complaint, which seeks relief because "CMGE securities traded at artificially inflated prices during the Class Period."  (*Reitan* Compl. ¶ 38).

In light of those similarities, the Court finds that *Reitan* and *Chang* involve common questions of law and fact, and therefore warrant consolidation.

## III.    APPOINTMENT OF THE LEAD PLAINTIFF

### A.  The PSLRA Framework

Appointment of a lead plaintiff in securities class action suits is governed by the PSLRA, 15 U.S.C. § 78u-4.  Congress, in enacting the PSLRA, sought to

> prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel. . . .   The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff . . . would be motivated to act like a real client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price.

*Peters v. Jinkosolar Holding Co. Ltd.*, No. 11-CV-7133, 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (Oetken, J.) (internal quotation marks and citations omitted).  The procedures defined in the PSLRA for appointing a lead plaintiff serve as the main vehicle for effectuating these goals.  *See* Craig C. Martin & Matthew H. Metcalf, *The Fiduciary Duties of Institutional*

---

[1] The *Reitan* complaint includes the misrepresentation of material facts about the "management" of CMGE here as well.  (*Reitan* Compl. ¶ 36).

*Investors in Securities Litigation*, 56 Bus. Law. 1381, 1383 (2001) ("The heart of the PSLRA is the statutory procedures enacted to determine which party will be allowed to control securities class action litigation as the 'lead plaintiff.'").

Courts are to assign as lead plaintiff the party "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSRLA establishes a rebuttable presumption that the most adequate plaintiff is the party that (1) filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought; and (3) otherwise satisfies the requirements of Rule 23. *Id.* § 78u-4(a)(3)(B)(iii)(I). For purposes of appointing a lead plaintiff, the only Rule 23 requirements that must be met are typicality and adequacy. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) (Marrero, J.); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (Scheindlin, J.).

Courts in this District use a four-factor test—first set out in *Lax v. First Merchants Acceptance Corp.*, Nos. 97-CV-2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)—to determine which party has the largest financial interest. *See Varghese*, 589 F. Supp. 2d at 394–95. The four factors are:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*Id*. at 395.  The most important factor is financial loss.  *Id*.; *see also Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 WL 4974839, at *3 (S.D.N.Y. Nov. 24, 2008) (Keenan, J.); *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (Buchwald, J.).

Additionally, "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs." *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see In re eSpeed, Inc.*, 232 F.R.D. at 99–100; *Malasky v. IAC/Interactivecorp*, No. 04-CV-7447, 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004) (Holwell, J.) (citing cases); *see also* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); S. Rep. No. 104-98, at 10–11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("The Committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring the court to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate plaintiff.'").

The PSLRA's statutory text also evinces Congress's desire to have lead plaintiffs appointed as soon as is practicable.  Public notice of a PSLRA suit must be given no more than twenty days after the initial complaint is filed.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Parties who wish to serve as lead plaintiff must file motions with the court "not later than 60 days after the date on which the notice [was] published."  *Id.* § 78u-4(a)(3)(A)(i)(II).  Courts are to decide lead plaintiff disputes no later than ninety days after public notice is given.  *Id.* § 78u-4(a)(3)(B)(i).

In *In re Livenet Inc. Noteholders Securities Litigation*, Judge Marrero explained why Congress wanted PSLRA suits to move quickly:

8

In prompting speedier qualitative determinations, the PSLRA suggests a recognition of another reality. Allegations that a person acted deliberately to defraud or deceive, or engaged in conduct reflecting extreme departures from acceptable legal norms in connection with publicly regulated securities transactions affecting not just one or a handful of persons, but very large numbers of investors and markets, are grave charges that should not be treated lightly. . . . As such, the impacts of accusations of intentional fraud may far exceed economic harm and mere vexation and inconvenience to the persons accused. Rather, the stigma associated with willful or egregious fraudulent behavior, even when published as mere unsubstantiated allegations, may work to impair reputations and extend in a consequential chain reaction to other aspects of personal and business affairs.

151 F. Supp. 2d 371, 424 (S.D.N.Y. 2001).

## B. Miran's "Withdrawal of Withdrawal" Motion

Before the Court can decide which party should be appointed lead plaintiff, it is first necessary to determine whether Miran's lead plaintiff motion is properly before the Court. This requires assessing the validity of Miran's "Withdrawal of Withdrawal" motion.

Miran's "Withdrawal of Withdrawal" motion appears to be based upon two separate arguments. First, it contends that Miran properly reinstated its original lead plaintiff motion by withdrawing its prior withdrawal. (Reply to Dormier 3–5). Second, even if it failed to properly reinstate its original motion, Miran claims that its "Withdrawal of Withdrawal" motion should serve as a new lead plaintiff motion, and it should be deemed timely. (*Id.* at 6–7).

Despite Miran's differentiation between these two arguments, the Court views them as different approaches to the same question: Should Miran be permitted to file an untimely motion for appointment as lead plaintiff after withdrawing a previous, timely motion? Because the facts of this case warrant an exception to the PSLRA's timing requirements, the Court answers this question in the affirmative.

9

i.  Timeliness Exceptions to the PSLRA

Courts within and outside of this District typically adhere strictly to the requirement that movants file their lead plaintiff motions within sixty days of the date when notice is published. *See, e.g.*, *Skwortz v. Crayfish Co.*, No. 00-CV-6766, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) (Batts, J.) (describing the PSLRA's 60-day lead plaintiff motion deadline as "mandatory" and refusing to consider a party for lead plaintiff who filed one day late); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 (E.D. Va. 2000) ("A motion filed after the sixty-day period by a person who has not filed a complaint, however, is untimely, and may not, except perhaps in rare circumstances, be considered by a court."); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.").

Yet several courts in this District have allowed untimely lead plaintiff filings in certain circumstances.  Some have accepted untimely filings after the originally selected lead plaintiff withdrew.  *See Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 328 (S.D.N.Y. 2012) (Oetken, J.); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002) (Scheindlin, J.).  Others have permitted a movant to amend its lead plaintiff motion after the 60-day deadline when multiple plaintiffs moved for appointment within the deadline, but joined together as a single group after the deadline and subsequently moved for joint lead plaintiff status.  *See Peters*, 2012 WL 946875, at *10; *Rozenboom v. Van Der Moolen Holding, N.V.*, No. 03-CV-8284, 2004 WL 816440, at *4–5 (S.D.N.Y. Apr. 14, 2004) (Sweet, J.); *Schulman v. Lumenis, Ltd.*, No. 02-CV-1989, 2003 WL 21415287, at *4 (S.D.N.Y. June 18, 2003) (Batts, J.).  Similarly, in *Malasky v. IAC/Interactivecorp*, Judge Holwell allowed a party

10

who filed a timely lead plaintiff motion to amend that motion after the 60-day deadline to increase the financial loss the party claimed.[2]  2004 WL 2980085, at *3 n.2.

As an initial matter, these decisions plainly demonstrate that courts in this District have not adhered strictly to the PSLRA's timing requirements in every instance.  *Contrast In re Telxon*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.").  The reasons for excepting cases from the 60-day deadline commonly are that a timely motion was filed previously, that the new motion is not made to manipulate the size of the movant's losses, and that granting the motion would not undermine any of the policies that underlie the PSLRA.

First, the movants excepted from the 60-day deadline in these decisions were allowed to file untimely motions only after previously filing timely motions.  *See Peters*, 2012 WL 946875, at *10 (noting that movants "had previously filed a timely motion"); *Rozenboom*, 2004 WL 816440, at *1–3 (stating that movants filed their initial lead plaintiff motions on December 19, 2003, after notice of the suit was published on October 20, 2003); *Schulman*, 2003 WL 21415287, at *4 (noting that the parties had "made timely motions" before they "sought to amend their motion[s] . . . after the statutorily-fixed period of sixty days"); *Malasky*, 2004 WL 2980085, at *3 n.2 (stating that "the Investor Group's original motion to be appointed as lead plaintiff was timely").[3]

---

[2] Even with this increased loss, however, the amending party was not chosen as lead plaintiff because another plaintiff alleged larger financial losses.

[3] In those cases where a lead plaintiff was appointed and later withdrew, courts did allow movants to file untimely lead plaintiff motions even though they had not already filed a timely lead plaintiff motion.  *See, e.g., Fort Worth Emples*, 862 F. Supp. 2d at 328 (asserting that the Court will consider lead plaintiff motions filed within thirty days of the withdrawal of the previously-appointed lead plaintiff).  Yet these specific cases are better read as ones where the lead plaintiff process is essentially restarted, with new timeliness deadlines for lead plaintiff motions.  *See*

Requiring potential lead plaintiffs to make an initial timely filing is sensible because it creates a bounded universe of potential lead plaintiffs.  The parties and the courts know exactly who the movants are and can begin immediately the process of assessing who is best suited to serve as lead plaintiff.  Even if later motions adjust the way some or all of these parties must be assessed (for instance, if some subsequently move to serve as joint lead plaintiffs), this bounded universe confines the scope of any such motion so as to prevent significant delays in the litigation.

Second, several decisions express concern that allowing parties to amend their lead plaintiff motions after the 60-day deadline might allow movants to manipulate the size of their financial losses.  In *Peters*, Judge Oetken noted this concern, but allowed a group of plaintiffs who had previously filed a timely lead plaintiff motion to combine into a single group and amend their lead plaintiff motions accordingly.  Judge Oetken noted that the group "plainly did not join up in order to 'manipulate the size of their financial loss,'" adding that "three out of the four members of the group already have far and away the largest financial losses of any other potential lead plaintiff."  *Peters*, 2012 WL 946875, at *10 (quoting *In re Telxon*, 67 F. Supp. 2d at 819).  In *Rozenboom*, Judge Sweet also discussed the potential for manipulation, but nevertheless allowed plaintiffs who had filed timely motions to join together as a group after the 60-day deadline because the parties lacked experience litigating securities class actions.  *See* 2004 WL 816440, at *4.  Judge Sweet explained that appointing the individuals as co-lead

_____

*id.* (starting a new 30-day time period during which parties can submit new lead plaintiff motions); *In re Initial Pub. Offering*, 214 F.R.D. at 120 (establishing a new 60-day period during which parties can submit new lead plaintiff motions).

plaintiffs "may help to ensure stability in the litigation and perhaps the exercise of greater control over the action's progress." *Id.*[4]

Third, before reaching a conclusion, several decisions consider whether a potential exception to the 60-day deadline would undermine any of the policies behind the PSLRA.  For example, in *Peters*, Judge Oetken justified accepting an untimely filing by explaining that not only had the two parties seeking to combine into one lead plaintiff group previously filed timely lead plaintiff motions, but they each also "had far larger financial losses [than the competing movant]," even before combining.  *Peters*, 2012 WL 946875, at *10.  In permitting their combination, Judge Oetken noted that allowing the two groups to combine after the 60-day deadline, was "consistent with the PSLRA, as it has been interpreted by this District."  *Id.* at 11. *See also Rozenboom*, 2004 WL 816440, at *4 (asserting that "the formation of a bartered coalition among movants after the 60-day period has run" might contradict the PSLRA's policy of eliminating "lawyer-driven litigation" by "shift[ing] the Court's authority to name lead plaintiffs to counsel").

### ii.   Miran Should be Excepted from the 60-Day Deadline

In light of the cases described in Section III.B.i *supra*, Miran should be excepted from the PSLRA's timeliness requirements.

First, Miran originally filed a timely lead plaintiff motion.[5]  *See Peters*, 2012 WL 946875, at *14 (describing a late-filed initial lead plaintiff motion as "a wholly different

---

[4] In *Malasky*, Judge Holwell seemingly allowed a party to increase, and therefore manipulate, its financial losses by amending its lead plaintiff motion after the 60-day deadline.  2004 WL 2980085, at *3 n.2.  However, even with its increased losses, the amending party was not appointed as lead plaintiff because its losses were lower than those of another party.  *Id.* at *3–4.  In other words, while the movant may have been allowed to manipulate its losses, that manipulation had no effect on the outcome of the lead plaintiff appointment process.

[5] Miran first moved to be appointed lead plaintiff on August 19, 2014, (Miran Lead Plaintiff Mem. [*Reitan* ECF No. 16]), fifty-nine days after Darryl Reitan published notice of his complaint in this suit.  (*Id.* at 6).

situation" from one where a party seeks to file a second, untimely lead plaintiff motion after initially filing a timely one).  Second, Miran's new motion, though untimely, does not seek to manipulate its alleged financial losses.  Miran is simply making the same lead plaintiff motion it filed initially.

Third, allowing Miran to make a new lead plaintiff motion will not offend the policy goals Congress hoped to achieve in passing the PSLRA.  Miran is an institutional investor and alleges greater financial losses than Dormier; Miran is precisely the type of plaintiff Congress hoped would become lead plaintiff.  *See* David H. Webber, *Is "Pay-to-Play" Driving Public Pension Fund Activism in Securities Class Actions? An Empirical Study*, 90 B.U. L. Rev. 2031, 2034 (2010), ("Congress believed that institutional investors, sophisticated investors with significant losses at stake, would carefully select and monitor plaintiffs' lawyers to the benefit of the class of aggrieved shareholders, in contrast to individual lead plaintiffs with meager shareholdings and little leverage over their counsel.").  Thus, allowing Miran to move again for lead plaintiff appointment advances some of the core policies underlying the PSLRA.

Moreover, excepting Miran from the PSLRA's timeliness requirement will not create significant delays in the Court's ability to decide this case.  Miran offers no new arguments and cites no new or different facts.  The time and effort required to decide whether Miran should be appointed lead plaintiff as compared to the other movants is no different now than it would have been had Miran never withdrawn its initial lead plaintiff motion.

The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes—rather it was to promote a client-driven rather than lawyer-driven process—and the statute seeks to do so by favoring institutional investors who suffered the greatest financial losses over other parties.  Miran's decision to withdraw its original lead plaintiff motion may have been

14

a procedural miscalculation, but overlooking that misstep is more in keeping with the policy intentions of the PSLRA than punishing Miran by enforcing a procedural bar. Accordingly, the Court permits Miran to file its untimely lead plaintiff motion.

### C.  Miran is Appointed Lead Plaintiff

After considering the lead plaintiff motions from Miran and Dormier, the Court appoints Miran to serve as lead plaintiff in this case. As discussed above, Miran is an institutional investor that has suffered the greatest financial losses. Additionally, Miran meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.

#### i.   Miran's Financial Losses

Miran states that it purchased 17,200 CMGE American Depository Shares, expended $84,834.13 in net funds, and suffered losses of $84,834.13. Thus, Miran alleges greater financial losses than Dormier, who claims $40,667.82 in losses stemming from the purchase of 8,000 shares of CMGE stock.

#### ii.   Miran's Typicality and Adequacy Pursuant to Rule 23

Typicality. The typicality requirement of Rule 23(a)(3) is met where "'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Canson v. WebMD Health Corp.*, No. 11-CV-5382, 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (Keenan, J.) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." *Id.* (internal quotation marks omitted); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05-CV-10240 et al., 2007 WL 2230177, at *13 (S.D.N.Y. July 27, 2007) (McMahon, J.).

Here, Miran's claims are based on the same legal theory (violations of the Securities Act and Exchange Act) and arise from the same events and course of conduct (CMGE's false or misleading statements concerning bribery) as the Class's claims. Thus, Miran's claims are typical of those of the Class.

Adequacy.  The adequacy requirement of Rule 23 is satisfied if the lead plaintiff "fairly and adequately protect[s] the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In order for the requirement to be satisfied, "(1) there should be no conflict between the proposed lead plaintiff and the members of the class, (2) the selected counsel should be qualified, experienced, and able to conduct the litigation, and (3) the lead plaintiff should have a sufficient interest in the outcome to insure vigorous advocacy." *Xianglin Shi v. Sina Corp.*, Nos. 05-CV-2154 et al., 2005 WL 1561438, at *3 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (internal quotation marks omitted).

Miran satisfies the adequacy requirements because (1) no conflict between Miran and the members of the Class has been brought to the Court's attention; (2) the selected counsel is qualified (as discussed in Section IV *infra*); and (3) Miran has sufficient interest in the outcome because it suffered significant damages from CMGE's purported misrepresentations.[6]

iii.  Rebuttable Presumption

---

[6] Miran is a segregated portfolio company that holds the assets of OPI.  Dormier argues that Miran would not be an adequate lead plaintiff because "it filed two motions [one by Miran and one by OPI] seeking approval of lead plaintiff, and in doing so, actually filed motions against itself."  (Dormier Resp./Objection 6).  Dormier bases its argument on the fact that both Miran and OPI "list the *exact same transactions, on the same days, for the same number of securities, and for the same price*." (*Id.* at 1 n.1) (emphasis in original).  The Court finds Dormier's contentions unpersuasive.

Although Miran holds the assets of OPI, the two funds are distinct legal entities.  As such, it is unsurprising, according to Miran, that each hired its own legal counsel and made separate motions for lead plaintiff appointment.  Dormier presents no evidence to prove the two entities are not legally distinct.  Moreover, even if the Court found that the two entities were not distinct, Dormier has offered no support for its claim that the duplicative lead plaintiff motions it describes would bar Miran from consideration.

The presumption in favor of appointing Miran as lead plaintiff may be rebutted if a member of the purported class can prove that Miran "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Miran has stated that it is "willing" to serve as the lead plaintiff and "will not accept any payment for serving as a [lead plaintiff] . . . beyond [its] pro rata share of any recovery." (Gonello Decl., Ex. B [*Reitan* ECF No. 20-2] at 2).  Further, no party has argued that Miran would not fairly or adequately represent the Class in this case.  Therefore, the Court finds that the presumption in favor of appointing Miran as lead plaintiff has not been rebutted.

## IV.     APPOINTMENT OF LEAD COUNSEL

The PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court has discretion to interfere with lead plaintiff's selection of lead counsel "when warranted to protect the interests of the class."  *Teran v. Subaye, Inc.*, Nos. 11-CV-2614 et al., 2011 WL 4357362, at *9 (S.D.N.Y. Sept. 16, 2011) (Buchwald, J.) (noting that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention" (internal quotation marks omitted)).

Miran has selected Faruqi & Faruqi as lead counsel.  When making the decision to approve proposed lead counsel, courts in the Second Circuit have emphasized the counsel's experience.  *See, e.g.*, *Varghese*, 589 F. Supp. 2d at 398 (considering proposed counsel's "extensive experience in prosecuting securities fraud actions" before approving the lead plaintiff's selection); *Xianglin Shi*, 2005 WL 1561438, at *5 (same); *In re Elan Corp. Sec. Litig.*, No. 02-CV-865, 2002 WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002) (Maas, J.) (same).  Faruqi &

17

Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995.  (Gonello Decl, Ex. D [ECF No. 20-4] at 2–3).  Faruqi & Faruqi achieved successful outcomes in many of these cases.  *See, e.g.*, *In re PurchasePro.com, Inc. Sec. Litig.*, No. CV-S-01-0483-JLQ (D. Nev.) (secured a $24.2 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 97-CV-5056 (E.D.N.Y.) (recovered $24.1 million for class members); *In re Tellium, Inc. Sec. Litig.*, No. 02-CV-5878 (FLW) (D.N.J.) ($5.5 million settlement); *In re Mitcham Indus., Inc. Sec. Litig.*, No. H-98-1244 (S.D. Tex.) ($3 million settlement); *Ruskin v. TIG Holdings, Inc.*, No. 98-CV-1068 (S.D.N.Y.) ($3 million recovery).

The Court finds that Faruqi & Farqui has the requisite experience necessary to serve as lead counsel, and thus will be able to effectively prosecute the consolidated action.

## V.    CONCLUSION

For the reasons stated above, the Court GRANTS the motion to consolidate the actions, *Reitan v. China Mobile Games & Entertainment Group*, 14-CV-4471, and *Chang v. China Mobile Games & Entertainment Group*, 14-CV-4745.  The Court APPOINTS Miran Segregated Portfolio Company – Miran Long Short Equity Segregated Portfolio as lead plaintiff, and Faruqi & Faruqi, LLP as lead counsel.

A Rule 16 Conference shall take place on December 8, 2014 at 11:00a.m.

Every pleading filed in the consolidated action shall bear the following caption:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re CHINA MOBILE GAMES & ENTERTAINMENT GROUP, LTD SECURITIES LITIGATION

This Document Relates To:

18

14-CV-4471

The Clerk of the Court is respectfully directed to terminate the following motions:
[*Reitan* ECF No. 10]; [*Reitan* ECF No. 13]; [*Reitan* ECF No. 15]; [*Reitan* ECF No. 17]; [*Reitan*
ECF No. 21].


SO ORDERED.

Dated:  New York, New York
        November 20, 2014

                                    _____/s/_____
                                    Kimba M. Wood
                                    United States District Judge