UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re CHINA MOBILE GAMES                   14-CV-4471 (KMW)

ENTERTAINMENT GROUP, LTD            **OPINION AND ORDER**

SECURITIES LITIGATION


--------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

      Lead Plaintiff Miran Segregated Portfolio Company – Miran Long Short Equity

Segregated Portfolio, Plaintiff Edward McCaffery, and Plaintiff Charlie Chun (collectively

"Plaintiffs") bring this putative class action against China Mobile Games & Entertainment

Group, Ltd. ("CMGE"), certain of its officers and directors, and several investment banks that

underwrote CMGE's secondary public offering (collectively "Defendants").

      Plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of

1934 (the "Exchange Act") and Sections 11 and 15 of the Securities Act of 1933 (the "Securities

Act"). (Compl. ¶¶ 1-2, 135-79 [Doc. No. 54]).  Plaintiffs allege that Defendants made materially

false or misleading statements relating to their involvement in bribery and related-party

transactions.  Plaintiffs allege that these statements artificially increased the price of CMGE

securities.

      Defendants have moved to dismiss the Consolidated Securities Class Action Complaint

("Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons

set forth below, because Plaintiffs fail to plead actionable misstatements or omissions and

scienter, Defendants' motion is GRANTED in its entirety.  Plaintiffs are granted leave to re-

plead their Complaint.

1

I.      **BACKGROUND**

A. The Parties

Plaintiffs are "investors who purchased publicly traded CMGE American Depository Shares ("ADS") between April 26, 2013, and January 14, 2015, inclusive" (the "Class Period"). *Id.* ¶ 1.

Defendant CMGE, a Cayman Islands corporation headquartered in Guangzhou, China, is a developer and publisher of games for feature phones, smart phones, and tablets.  *Id.* ¶¶ 4, 13. CMGE's ADS are actively traded on the NASDAQ Global Market.  *Id.* ¶8.  Defendant Ken Jian Xiao ("Xiao") is CMGE's Chief Executive Officer ("CEO"), and Defendant Ken Fei Fu Chang ("Chang") is CMGE's Chief Financial Officer ("CFO").  *Id.* ¶¶ 4, 14-17.  Defendant Shuling Ying ("Ying") was President of CMGE from October 2013 until his removal on or about June 19, 2014.  *Id.*  Two months later, Ying returned to CMGE as Chief Operating Officer ("COO"). *Id.* ¶ 16.  Defendants Credit Suisse Securities (USA) LLC, Jefferies LLC, Barclay's Capital, Inc., and Nomura Securities International, Inc. served as underwriters for CMGE's $82 million secondary offering that closed on or about March 26, 2014. *Id.* ¶¶ 19-24, 36.

B. Ying, Zhongzheng, and CMGE

Before becoming President of CMGE, Ying was founder and CEO of Zhongzheng.[1]  *Id.* ¶ 46.  In 2012, Zhongzheng began "cooperating" with CMGE; by 2013, Zhongzheng had entered into an agreement to promote and advertise CMGE games.  *Id.*

In June 2013, Ying became President of CMGE's Joygame division, the publishing arm of CMGE.  *Id.* ¶ 16.  At the same time, Ying divested his 70.8% ownership of Zhongzheng.  *Id.* ¶ 48.  Ying's interest was transferred to Juan Du, the General Manager of CMGE's Publishing

---

[1] The Complaint fails to provide many details about Zhongzheng and the company's main functions.

Support Center. [2]  *Id.*  Ying served as President of all of CMGE from October 2013 until his

removal on or about June 19, 2014.  *Id.* ¶ 16.

During Ying's tenure as President, CMGE purportedly became the largest publisher of

mobile games in China.  *Id.* ¶ 55.  In 2013, CMGE's game licensing business yielded 50.9% of

the company's total net revenues, a 289% increase from the 17.6% share of revenues in 2012.

*Id.*  The success of the CMGE's publishing business became integral to the company's success.

*Id.* ¶ 57.

C.  Allegations in the Complaint

Plaintiffs allege that Defendants failed to disclose their involvement in (1) bribery; and

(2) related-party transactions, thereby artificially increasing the price of CMGE securities.

First, Plaintiffs allege that CMGE failed to disclose its involvement in bribery.

According to Plaintiffs, CMGE—under the leadership of Defendant Ying—engaged in bribery in

order to maintain positive relations with its distributors.  *Id.* ¶ 58.  In CMGE's 2012 and 2013

Form 20-Fs, filed on April 26, 2013 and March 7, 2014, respectively, Defendants Xiao and

Chang made assurances relating to CMGE's disclosure and financial reporting controls,

certifying that they "[e]valuated the effectiveness of the Company's disclosure controls and

procedures," "[d]isclosed . . . all material weaknesses" to CMGE's auditors, and other similar

statements relating to CMGE's disclosure and financial reporting controls.  *Id.* ¶¶ 76, 84.  By

failing to disclose the alleged bribery, Plaintiffs allege that Defendants failed to disclose a

material weakness in the company's operations.  *Id.* ¶¶ 77, 85, 87.

---

[2] On February 14, 2014, Du's interest was transferred to Chenghai Dan, the Procurement Director of
CMGE.  (Compl. ¶ 49 [Doc. No. 54]).  Chenghai Dan became the 95% owner of Zhongzheng and the remaining 5%
of the company was transferred to Xu Zhang, whom the Complaint does not identify.  *Id.*

Second, Plaintiffs also allege that CMGE failed to disclose related-party transactions with Zhongzheng in quarterly financial reports, an annual report, and Offering Documents. *Id.* ¶¶ 78-95). Plaintiffs allege that Ying continued to secretly control his former company after assuming his position as President of CMGE. *Id.* ¶ 48. By failing to disclose the alleged related-party transactions with Zhongzheng, Defendants violated SEC regulations and generally accepted accounting principles. *Id.* ¶¶ 78-95.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6), Rule 9(b), and the PSLRA Pleading Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint governed by Rule 8 of the Federal Rules of Civil Procedure "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In assessing whether a complaint meets this standard, a court examines only well-pleaded factual allegations, disregards legal conclusions, and draws all reasonable inferences in favor of the non-movant. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006). Ultimately, the court must determine whether the allegations of the complaint "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678.

A complaint that asserts securities fraud, however, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). 15 U.S.C. § 78u–4; *see ECA & Local 134 IBEW Joint Pension Tr. v. J.P. Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud." The Second

Circuit interprets this rule to require that a complaint: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).  Although Rule 9(b) permits "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally[,]" a plaintiff is required to "allege facts that give rise to a strong inference of fraudulent intent." *Acito v. FMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (quoting Fed. R. Civ. P. 9(b)).

B. Section 10(b) and Rule 10b-5

Plaintiffs' principal claims are brought under section 10(b) of the Exchange Act.  To state a claim for securities fraud under section 10(b) and Rule 10b-5, plaintiffs must allege: (1) a material misrepresentation or omission; (2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

III. **DISCUSSION**

In this case, the parties contest whether the complaint adequately alleges (1) any actionable misstatements or omissions; (2) scienter; and (3) loss causation.  Because Plaintiffs fail to adequately plead either actionable misstatements or omissions, or scienter, the Court grants Defendants' Motion to Dismiss.

A. Motion to Strike

As an initial matter, Plaintiffs move to strike the following documents in connection with Defendants' Motion to Dismiss: (1) a January 28, 2015 news article published by China Daily, (Defs.' Mot. to Dismiss, 6-7 n.4 [Doc No. 58]); (2) "attorney representations" concerning the

June 19, 2014 conference call, *id.* at 1; (3) "attorney representations" concerning the Independent Committee, *id.* at 5 n.2; (4) an article about the history of "red envelopes," *id.* at 13 & 13 n.2; and (5) Exhibits G and H from the Declaration of Adam T. Humann, [Doc. No. 59].

The Court grants Plaintiffs' Motion to Strike because the evidence Defendants seek to introduce was neither incorporated by reference in the Complaint nor properly the subject of judicial notice. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint."). Unless the Court excludes the documents at this stage, it must convert the motion to dismiss into a motion for summary judgment and delay consideration of the motion until both sides have a reasonable opportunity to present pertinent evidence. *See Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, No. 06-CV-3085, 2007 WL 867202, at *1 (S.D.N.Y. Mar. 21, 2007) (Wood, J.). The Court grants Plaintiffs' Motion to Strike and does not rely on any of the above referenced documents in reaching its decision.[3]

### B.  Actionable Misstatements or Omissions

Plaintiffs fail to allege any actionable misstatements or omissions with regard to bribery or related-party transactions.

In order to properly allege misstatements or omissions of material fact, plaintiffs must do more than simply say that statements were false and misleading; "they must demonstrate with specificity why and how that is so." *Rombach*, 355 F.3d at 174. In addition, where a Plaintiff asserts the falsity of a statement, the plaintiff must plead that it "was both objectively false and

---

[3] The Court denies Plaintiffs' request for judicial notice, [Doc. No. 68], because the documents for which they request judicial notice were not incorporated into the Complaint. Plaintiffs will have the opportunity to include additional documents if they choose to re-plead.

disbelieved by the defendant at the time it was expressed." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (Forrest, J.), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011)); *Novak*, 216 F.3d at 309 (Plaintiffs must allege contemporaneous falsity).

Omissions are actionable only if the defendant has a duty to disclose the information and fails to do so. *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988).

An alleged misstatement or omission must be material. *Id.* at 238. A fact is considered material if "there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir. 1994). In the context of a 12(b)(6) motion, a complaint cannot be dismissed on the ground that the alleged misstatements or omissions are immaterial "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *ECA*, 553 F.3d at 197 (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).

*1. Alleged Bribery*

Plaintiffs fail to allege any actionable misstatements or omissions with regard to bribery, because they do not adequately allege contemporaneous falsity.

a. The Allegations

Plaintiffs allege that under Ying's watch CMGE engaged in bribery. (Compl. ¶ 58). According to Confidential Witness No. 2 ("CW2"), who from at least June 2013 to January 2015 worked as a marketing manager in the Shanghai office of a CMGE subsidiary, CMGE

maintained relationships with game distributors by regularly giving out cash gifts, including "red envelopes," to important connections during the Chinese New Year.[4]  *Id.*

On June 19, 2014, a report by analysts at Nomura HK revealed that CMGE stated on a conference call that it removed nine senior managers from their positions for involvement in bribery.[5]  *Id.* ¶ 64.  Plaintiffs have been unable to locate a transcript or recording of this call and CMGE denied that anyone was terminated for bribery.  *Id.* ¶ 64-65.  The day after the Nomura HK report was released CMGE's share price dropped by $4.57, or more than 24%, to close at $14.33. *Id.* ¶ 97.

On June 20, 2014, CMGE announced that it temporarily removed nine employees from their positions, including Ying, because it was restructuring its publishing business.  *Id.* ¶ 65.  On June 26, 2014, market speculation regarding bribery at CMGE caused the company to authorize an independent committee to investigate the matter.  *Id.* ¶ 70.  On August 14, 2014, CMGE announced that the investigation by the independent committee "did not find any evidence that suggested CMGE or anyone at CMGE had engaged in bribery."  *Id.* ¶ 73.  Four days later, CMGE appointed Ying as COO.  *Id.* ¶ 74.

      b.   Application

Plaintiffs fail to allege any actionable misstatements or omissions, because they do not allege contemporaneous falsity.  *See Novak*, 216 F.3d at 309.  The Nomura HK report and the news articles upon which Plaintiffs rely were released more than three months *after* CMGE filed

---

[4] According to a game operator interviewed by Chinese news outlet 21st Century Business Herald, "[c]urrently in mobile gaming 'channels are king' is still the case. With volume you are on top, and if they have a strong position, all of the developers will curry favor with them, and they often hand over a little money."  (Compl. ¶ 58) (internal citation omitted).

[5] Plaintiffs also cite news articles to support their allegations, but those articles seem to draw their facts from the Nomura HK report.

its 2013 Form 20-F and more than a year after it filed its 2012 Form 20-F.[6]  Plaintiffs try to

allege contemporaneous falsity through CW2, but as they themselves note, CW2 worked at a

CMGE subsidiary, not at the company itself.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp.

2d 326, 358 (S.D.N.Y. 2011) (Sullivan, J.) (The testimony of the confidential witness "could

describe the anomalies of a rogue fiefdom rather than company-wide practices.").  Plaintiffs'

inability to allege that any bribery occurred during the Class Period is fatal to their required

showing of contemporaneous falsity.  Without a showing of contemporaneous falsity, Plaintiffs

cannot allege actionable misstatements or omissions with regard to bribery.

> 2.  *Alleged Related-Party Transactions*

Plaintiffs fail to properly allege misstatements or omissions with regard to alleged

related-party transactions, because they do not plead sufficient facts to show that Ying somehow

secretly controlled Zhongzheng after having divested his entire interest in the company.

> a.  The Allegations

Plaintiffs allege that CMGE engaged in multiple related-party transactions with

Zhongzheng.  First, Plaintiffs allege that Ying secretly maintained control of Zhongzheng by

transferring ownership of the company to Juan Du and Chenghai Dan, employees at CMGE.

(Compl. ¶¶ 48-49).  Second, Plaintiffs claim that Zhongzheng is a major developer for CMGE.

*Id.* ¶ 50.  The Complaint states that the 91 Wireless App Store, a distribution channel for CMGE,

lists Zhongzheng as the operator or developer of several CMGE games.  *Id.* ¶ 50, 52.  One of

---

[6] Defendants attempt to discredit the Nomura HK report by pointing out that the report disclaims the accuracy, completeness, and reliability of the information provided. (Defs.' Mot. to Dismiss, 1, 5, 12 [Doc No. 58]). But Defendants do not explain why the report's boilerplate disclaimers would apply to a simple fact, such as whether or not CMGE officials stated on the call that employees were dismissed from the company because of possible involvement in bribery.  The report's disclosure about bribery should not be cast aside so easily.  Rather, it is the timing of the report that is fatal to Plaintiffs' allegation of contemporaneous falsity.

these games is the "extremely" successful "Super Hero," which generates monthly billings of over $6.4 million. *Id.*

Third, Plaintiffs allege that during the Class Period, Defendants omitted Ying's role at Zhongzheng in their description of his professional experience. *Id.* ¶ 47. Both CMGE's Annual Report (Form 20-F) (Mar. 7, 2014) and Form F-3 filed with the SEC on March 7, 2014, allegedly failed to disclose that Ying was founder and CEO of Zhongzheng. *Id.*

Plaintiffs allege that additional connections between CMGE and Zhongzheng are discernable from a report published by the anonymous "GeoTeam," which self-identifies as a CMGE short-seller.[7] *Id.* ¶ 5. The GeoTeam report was published on January 15, 2015. *Id.* ¶ 98. The following day, CMGE's share price fell by $1.49, or more than 7%, to close at $17.54.[8] *Id.* ¶ 99.

### b. Application

Although Plaintiffs are correct that CMGE is under a duty to disclose related-party transactions and that their alleged omission would likely be material, Plaintiffs fail to specifically plead facts showing that there were related-party transactions to disclose. The Complaint states that Ying sought to conceal his continued control of Zhongzheng from investors, despite having divested all ownership interest in the company. *Id.* ¶ 48. But Plaintiffs offer no support for the proposition that Ying somehow continued to control Zhongzheng.

---

[7] First, the report discloses that the email address of Shuzhong Min, CMGE General Manager, ends in "daw.so," which is the domain name of Zhongzheng's website. (Compl. ¶ 51). Second, the GeoTeam report noted that the phone number listed on Zhongzheng's 91 Wireless App Store page links to other games published by CMGE. *Id.* ¶ 52. Third, on October 16, 2014, Zhongzheng changed its registration address with the Chinese State Administration for Industry and Commerce to that of CMGE's Wholly Foreign Owned Entity and the Shenzhen office of CMGE's Joygame division. *Id.* ¶ 53-54. Fourth, when the GeoTeam visited Zhongzheng's new office in November 2014, the office displayed CMGE's sign and the receptionist had not heard of Zhongzheng. *Id.* ¶ 54.

[8] The Court assumes that the Complaint meant January 16, 2015, rather than January 16, 2014.

Without any support for the claim that Ying secretly controlled Zhongzheng during the Class Period, Plaintiffs fail to plead a false or misleading statement with sufficient particularity. *See Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-CV-2700, 2012 WL 3957916, at *18 (S.D.N.Y. Sept. 10, 2012) (Castel, J.) (dismissing Rule 10(b) claim for failure to allege with particularity an alleged related-party transaction when one of the only supporting facts was that the CEO of the company picked up the business license for the alleged related party).   Plaintiffs point to the June 2013 transfer of Zhongzheng's ownership to Juan Du and the February 2014 transfer of ownership to Chenghai Dan, (Compl. ¶¶ 48-49); however, the Complaint neither notes the relationship between Ying and Du or Ying and Dan, nor describes any facts showing that Ying continued to hold decision-making power over Zhongzheng.[9]  Without this vital link, Plaintiffs do not provide sufficient support for their claim that Ying "continued to control" Zhongzheng while at CMGE.  *See id.* ¶ 48.

Plaintiffs' reliance on *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-CV-2279 CM, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) (McMahon, J), is unavailing because in that case, the complaint attached public documents proving the related-party transaction.  Plaintiffs in *In re Advanced Battery Techs* alleged that Advanced Battery Technologies ("ABAT") failed to disclose that its chairman and CEO, Zhiguo Fu, was the owner of a company recently acquired by ABAT.  2012 WL 3758085, at *3.  The complaint attached the acquisition agreement showing Fu's purchase of the company that was later bought by ABAT.  *Id.* at *4, *10.  By contrast, in this case there are no documents and no reference to facts that would support the

_____

[9] Plaintiffs, likely realizing the weaknesses in the Complaint, attempt to improperly plead new facts in their Opposition to the Motion to Dismiss. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (a party may not amend its complaint through statements made in motion papers).  First, Plaintiffs allege that both Du and Dan "worked under Ying's direct control" and under "Ying's direct supervision."  (Pls.' Opp'n to Defs.' Mot. to Dismiss, 10 [Doc. No. 66]).  Second, Plaintiffs allege that "even if Ying did not control Dan and Du, Zhongzheng would still be [a related party] because Dan and Du were both 'managers' of CMGE."  *Id.*  The Court does not consider these allegations because they were not part of the Complaint.

allegation that Ying continued to control Zhongzheng.  In fact, the public documents in this case show that Ying divested any ownership interest he had in Zhongzheng when he joined CMGE. (Compl. ¶ 48).  Plaintiffs do not allege facts sufficient to show that CMGE and Zhongzheng are related parties.

C.  Scienter

Not only does the Complaint fail to adequately plead actionable misstatements or omissions, but it also fails to adequately plead that Defendants CMGE, Xiao, and Chang acted with the requisite scienter.

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2); *see also Tellabs Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 321 (2007) ("The 'strong inference' standard unequivocally raised the bar for pleading scienter.") (internal citation and quotation marks omitted).  A court must decide "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* at 322-23 (emphasis in original).  To qualify as "strong," the "inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314; *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008) ("While we normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, [the PSLRA] establishes a more stringent rule for inferences involving scienter").

In the Second Circuit, "[t]he requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong

circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198.

Motives common to corporate officers, like "the desire for the corporation to appear profitable

and the desire to keep stock prices high to increase officer compensation," do not suffice to plead

scienter. *Id.*; *Novak*, 216 F.3d at 307-08 (Plaintiffs must "allege that defendants benefitted in

some concrete and personal way from the purported fraud."). The "motive" showing is often

met by allegations that corporate insiders allegedly engaged in misrepresentations in order to sell

their own shares at a profit. *ECA*, 553 F.3d at 198 (citing *Novak*, 216 F.3d at 308). A plaintiff

who cannot show scienter by alleging motive and opportunity can still "raise a strong inference

of scienter under the 'strong circumstantial evidence' prong, 'though the strength of the

circumstantial allegations must be correspondingly greater' if there is no motive." *Id.* at 198-99

(quoting *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

      Recklessness is defined as conduct that, at the least, is "highly unreasonable" and

constitutes "an extreme departure from the standards of ordinary care to the extent that *the

danger was either known to the defendant or so obvious that the defendant must have been

aware of it*." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009)

(emphasis in original) (quoting *In re Carter-Wallace, Inc. Securities Litigation*, 220 F.3d 36, 39

(2d Cir. 2000)); *see also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("An

egregious refusal to see the obvious, or to investigate the doubtful" can give rise to an inference

of recklessness.").

      To properly plead recklessness, a plaintiff may either specifically allege defendant's

knowledge of facts or access to information contradicting defendant's public statements, or

allege that the defendant failed to check information that s/he had a duty to monitor. *Novak*, 216

F.3d at 308. "Where plaintiffs contend defendants had access to contrary facts, they must

specifically identify the reports or statements containing this information." *Id.* "An allegation that a defendant merely ought to have known is not sufficient to allege recklessness." *Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 184 (S.D.N.Y. 2012) (Keenan, J.) (quoting *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (Pollack, J.)). Allegations of "corporate mismanagement" are too vague to support a claim under section 10(b). *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012) (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977)).

Plaintiffs' allegations fail to support a strong inference of scienter based on either (1) motive and opportunity; or (2) circumstantial evidence of conscious misbehavior or recklessness.

### 1. Plaintiffs Fail to Allege Facts to Support Motive and Opportunity

Plaintiffs contend that two allegations support their showing of motive: (1) the Defendants' desire to conceal bribery and related-party transactions itself supports the inference that Defendants acted with fraudulent intent (Compl. ¶ 129; Pls.' Opp'n 17-18); and (2) Defendants did not want to undermine the 2014 offering by disclosing bribery and related-party transactions. (Compl. ¶¶ 86-89; Pls.' Opp'n at 17).

Plaintiffs' allegations fail to support a strong inference of scienter based on motive. The Complaint does not describe, as it must, how Defendants benefited in "some concrete and personal way" from the alleged related-party transactions or bribery. *Novak*, 216 F.3d at 307-08. Instead, and without any factual support, Plaintiffs simply claim a desire on Defendants' part to conceal the alleged related-party transactions or bribery. Plaintiffs' conclusory language about a desire to conceal is insufficient to create a "strong inference" that Defendants acted with the required state of mind. *See ECA*, 553 F.3d at 198.

Likewise, Plaintiffs' generalized claim that the alleged fraud would undermine CMGE's 2014 offering is devoid of factual support. In support of their claim, Plaintiffs again improperly rely on *In re Advanced Battery Techs.* This case is not analogous for the reasons stated above, and because the well-pleaded allegations in that case supported the claim that the company "itself was a fraud, backdoored into the U.S. equity markets in order to raise money that it promptly diverted to a handful of insiders." *In re Advanced Battery Techs.*, 2012 WL 3758085, at *11. Here, by contrast, Plaintiffs have failed to support the allegation that Defendants raised shareholder money using misleading documents and partook in related-party transactions. Without a showing of motive, Plaintiffs must plead facts showing a strong inference of conscious misbehavior or recklessness in order to allege scienter.

      2.  *Plaintiffs Fail to Allege Circumstantial Evidence of Conscious Misbehavior or Recklessness*

Plaintiffs fail to plead circumstantial evidence of conscious misbehavior or recklessness. *See Tellabs*, 551 U.S. at 314. Plaintiffs allege that: (1) Defendants were aware of their obligations to disclose related-party transactions and material weaknesses and therefore aware that their statements were misleading, (Compl. ¶ 88, Pls.' Opp'n at 18-19); (2) the simplicity and obviousness of the fraud supports an inference of scienter, (Compl. ¶ 129; Pls.' Opp'n at 20); (3) Xiao and Chang had to sign and submit management representation letters disclosing all of CMGE's related-party transactions and failed to disclose Zhongzheng, (Compl. ¶¶ 118-20; Pls.' Opp'n at 19); (4) Defendant Xiao knew Zhongzheng was a related party because he had personally interacted with Ying when Ying was CEO of Zhongzheng, and Defendant Chang knew because, as CFO, he had access to information that would reveal the true nature of the relationship between Zhongzheng and CMGE, (Compl. ¶¶ 46, 125-28; Pls.' Opp'n at 18); (5)

CMGE, Xiao, and Chang were actively concealing related-party transactions when they failed to include Ying's employment history with Zhongzheng, (Compl. ¶ 47; Pls.' Opp'n at 19); (6) Defendants attempted to cover up the alleged bribery, (Compl. ¶¶ 70, 74; Pls.' Opp'n at 20); and (7) the alleged related-party transactions and bribery involved the "core operations" of CMGE's business, (Compl. ¶ 127; Pls.' Opp'n at 20-21).

The first three allegations can be easily disposed of because they ask the Court to assume that any alleged omissions were due to fraudulent intent.  Defendants' awareness of disclosure obligations does not show scienter.  In order for knowledge of disclosure obligations to be relevant to this inquiry, Plaintiffs must first show that Defendants Xiao or Chang knew or were reckless in not knowing about the alleged related-party transactions or bribery.  *See S. Cherry St., LLC*, 573 F.3d at 109.  Plaintiffs have not met this pleading requirement.

Plaintiffs' allegations concerning Xiao's interactions with Ying and Chang's access to information fail for two reasons.  First, Plaintiffs do not explain how Xiao's interaction with Ying *before* he joined CMGE can show knowledge of a related-party transaction when Plaintiffs admit that Ying officially divested his ownership interest in Zhongzheng upon joining CMGE. *See* (Compl. ¶ 48).  Second, scienter can be inferred based on access to information only when Plaintiffs "specifically identify the reports or statements containing this information." *Teamsters*, 531 F.3d at 196 (quoting *Novak*, 216 F.3d at 309).  Here, Plaintiffs refer vaguely to "sources of information," (Pls. Opp'n at 18; Compl. ¶¶ 125-28), but the information identified in the Complaint is the type of "raw data" consistently rejected by courts as insufficient to plead scienter.[10]  *See, e.g., Teamsters*, 531 F.3d at 196.  Because Plaintiffs plead no facts to show that

---

[10] Plaintiffs essentially claim that Defendants should have known about the alleged related-party transactions and bribery based on their corporate position, a contention courts in this circuit consistently reject. *See, e.g., In re Sotheby's Holdings, Inc.*, No. 00-CV-1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) (Cote, J.)

Xiao or Chang had access to information showing that Ying's divestment was a fiction, Plaintiffs' allegations fail.

Plaintiffs' allegations that CMGE, Xiao, and Chang were actively concealing the related-party transactions or bribery fail because they are too speculative to give rise to a strong inference of scienter.  Plaintiffs claim that Defendants omitted Ying's professional experience as founder and CEO of Zhongzheng in order to conceal a greater fraud.  (Compl. ¶ 47).  This omission hardly leads to the inference that Xiao and Chang were actively concealing related-party transactions.  Without any factual support for allegations that Xiao or Chang knew that Ying was still linked with Zhongzheng, the omission is not relevant to Defendants' state of mind.

The allegations that Defendants concealed bribery fail for the same reason.  Plaintiffs' claim that CMGE's denial of bribery and reassignment of Ying "strongly suggests that Xiao and CMGE were aware of the bribery all along."  Pls.' Opp'n at 20.  But the alleged facts support the inference that there was no fraud: the company authorized an independent committee to look into market speculation of bribery, and found none.  Further, Plaintiffs' allegations about subsequent actions say nothing about the Defendants' state of mind *at the time* of the alleged misstatements. *See, e.g.*, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994*)*; *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007) (Stein, J.) ("In order for a statement to be false or misleading, a plaintiff must allege that the speaker was aware of adverse information at the time he spoke.").

---

("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter.").

Finally, to the extent that the core operations doctrine has survived the PSLRA,[11] Plaintiffs' argument that the doctrine supports an inference of scienter fails because fraudulent statements concerning a company's core operations cannot independently show scienter.  *See, e.g.*, *New Orleans Employees Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011); *Bd. of Trustees of City of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 871-72 (S.D.N.Y. 2011) (Sullivan, J.), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012) ("[I]n the absence of Second Circuit guidance, the Court does not find [the core operations doctrine] to be independently sufficient to raise a strong inference of scienter.").  Here, Plaintiffs have failed to plead facts indicating that Defendants knew or were reckless in not knowing that their statements were false when made.  Absent such a showing, the mere fact that the publishing department of CMGE was at the core of CMGE's business does not support a finding of scienter.  *See e.g.*, *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011) (Sullivan, J.) ("[T]he Court considers 'core operations' allegations to constitute supplementary but not independently sufficient means to plead scienter.").

D.  Loss Causation

Because Plaintiffs fail to adequately plead either actionable misstatements or omissions or scienter, the Court need not reach the issue of loss causation.[12]  *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *22 (S.D.N.Y. Sept. 28, 2012) (Sullivan, J.) *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d

---

[11] The Second Circuit has not ruled on the viability of the core operations doctrine following the passage of the PSLRA in 1995.  *See Plumbers & Pipefitters Local Union No. 630 Pension–Annuity Trust Fund v. Arbitron Inc.*, 741 F.Supp.2d 474, 490 (S.D.N.Y. 2010) (Koeltl, J.).

[12] However, the Court does not find Defendants' argument that the GeoTeam report contained publicly available information persuasive.  The report contains information that was not readily accessible, including: information requiring travel to China, communicating in Chinese, reading signs in Chinese, and translating financial filings in Chinese.  (Compl. ¶¶ 48-49, 59); *see In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (Sullivan, J).

Cir. 2014) (Because the inability to plead scienter is fatal to Plaintiffs' Section 10(b), "the Court need not reach the UBS Defendants' arguments regarding . . . loss causation.").

### E. Plaintiffs' Other Claims

Because the Court concludes that Plaintiffs fail to allege any actionable misstatements or omissions, Plaintiffs' claims under Sections 11 and 15 of the Securities Act and Section 20(a) of the Exchange Act also fail.[13]

### F. Leave to Re-plead

Plaintiffs seek leave to amend the Complaint in the event of dismissal.  (Pls. Opp'n at 25-26).  Rule 15(a) provides that leave to amend a complaint "shall be freely granted when justice so requires."  *See also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud with greater specificity when they dismiss under Rule 9(b).").  The Court grants Plaintiffs thirty days from the date of this Opinion and Order in which to re-file their Complaint.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  Plaintiffs are given thirty days to file an amended complaint, should they choose to do so.

SO ORDERED.

DATED:      New York, New York
            March 7, 2016

                                        /s/
                                    KIMBA M. WOOD
                                United States District Judge

---

[13] In order to allow a court to evaluate Securities Act claims independently from Exchange Act claims, Plaintiffs must carefully structure their complaint "to draw a clear distinction between the negligence and fraud claims." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (Lynch, J.); *see also Lewy v. SkyPeople Fruit Juice*, Inc., No. 11-CV-2700, 2012 WL 3957916, at *7-*9 (S.D.N.Y. Sept. 10, 2012) (Castel, J.); *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 612 (S.D.N.Y.2008) (Chin, J.) *aff'd*, 347 F. App'x 665 (2d Cir. 2009).  This means that Plaintiffs cannot re-allege fraud claims and still claim that their Section 11 claims do not sound in fraud.  *See* (Compl. ¶ 158).